BOWES, Judge.
The defendant, Robert Sheppard, pled guilty to one count of armed robbery and *1205 was sentenced to ninety-nine years at hard labor. After a careful examination of the record in its entirety, we affirm.

PROCEDURAL FACTS

The underlying facts of defendant’s crime have been set out in State v. Sheppard, 510 So.2d 118 (La.App. 5 Cir.1987). For our purposes, it is sufficient to state at this point that Sheppard was charged in May of 1986 with two counts of armed robbery under LSA-R.S. 14:64. At his arraignment on July 17, 1986, defendant pled not guilty.
On October 20,1986, defendant withdrew his former plea of not guilty and, after being advised of his rights, pled guilty to one count of armed robbery. In exchange for defendant’s guilty plea, the state dismissed the second count of armed robbery.
Following a pre-sentence investigation, the judge, on December 18,1986, sentenced defendant to ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence with cogent reasons for his action.
A motion for appeal was thereafter filed at which time defense counsel raised the following assignments of error:
1. Assigned as error are any and all errors patent on the face of the record.
2. The trial court erred in sentencing the defendant to an excessive sentence.
On June 29, 1987, this Court affirmed defendant’s conviction and sentence, specifically holding that the sentence of 99 years given the defendant was not excessive under the circumstances of the case. State v. Sheppard, supra.
On January 16, 1990, defendant filed an application for post-conviction relief, alleging that he was denied effective assistance of counsel at trial and at sentencing and further that he was denied due process at sentencing because the trial judge failed to consider mitigating circumstances. The trial judge found defendant’s claims to be without merit and accordingly denied his application for post-conviction relief.
Defendant thereafter filed a writ application in this Court challenging the denial of his application for post-conviction relief (No. 90-KH-484). On June 13, 1990, a panel of this Court granted defendant’s writ application, issuing the following disposition:

WRIT GRANTED

We cannot discern from the present record whether or not the possibility of a defense of insanity, relative to relator’s alleged drug-induced hallucination, was adequately made known to him prior to his entering a plea of guilty.
Accordingly, the case is remanded to the trial court and the trial judge is instructed to conduct an evidentiary hearing to determine this issue.
Pursuant to this Court’s order, an eviden-tiary hearing was conducted in the district court on November 16, 1990 to determine whether or not petitioner was aware of the possibility of an insanity defense relative to his alleged drug induced hallucination prior to entering a plea of guilty. After hearing the evidence, Judge Grefer signed an order on December 3, 1990, finding that defendant was not made aware of the possibility of the defense of insanity prior to entering his guilty plea. Nonetheless, the trial judge denied relief, finding as follows: “The fact that the plea of not guilty by reason of insanity was not adequately made known to the defendant prior to his entering a plea of guilty does not affect the validity of the plea as the plea of not guilty by reason of insanity was not validly available to the defendant at the time the plea was made.” Defendant thereafter filed a notice of intent to apply to this Court for a writ of review.
This Court denied the application on the basis that the record disclosed he was already represented by counsel and “Therefore, he cannot be both represented and representative at the same time. See State v. McCabe, 420 So.2d 955 (La.1982).” Upon application to the Supreme Court, the case was remanded to this Court for briefing, argument, and opinion. In the meantime, counsel was appointed to represent the defendant in this writ application. Here we *1206 address the present appeal pursuant to the Supreme Court’s order.

ASSIGNMENTS OF ERROR

1. The trial court erred in concluding that the defense of insanity was not validly, available to Sheppard.
2. Sheppard was denied the effective assistance of counsel at his plea and his guilty plea is invalid.
3. The defendant was denied the right to present evidence relative to the merits of his writ application.

ANALYSIS

The defense of insanity as presented by the defendant relates to his alleged drug-induced hallucinations at the time of the offense.
In this connection one of the most striking facts at the threshold of this case is that, although we have closely examined the record, we can find no claim by the defendant, nor one scintilla of evidence, that he ever told either of his attorneys about his alleged intoxication and hallucinations at the time of the crime, and at the time of his attempted apprehension,[1] about his alleged use of PCP; nor, indeed, did he tell either attorney that he ever used any drugs at all.
Further, although we do not have access to the presentence investigation report which is not part of this record, defendant claims that he did tell the probation officer something about his alleged use of PCP and its affecting him at the time of the crime.[2] The date of the entry of the plea of guilty and the date of Sheppard’s interview with the probation officer, the presen-tence investigation, and the date of his sentencing are all within a period of not quite 60 days. Therefore, it is obvious to us that if Sheppard thought to tell the probation officer of his alleged use of PCP, he certainly could and should have told one or both of his attorneys the same thing; consequently, we cannot see how either attorney failed in any duty to Sheppard by not advising him of the possibility of an intoxication/insanity defense when Sheppard gave them no indication whatsoever that he had ever used drugs on the night of the crime or at any other time — nor does he ever claim to have done so.
In this connection, we note from the record that Sheppard is apparently a very intelligent and well educated person, by virtue of his several well drafted pro se applications for writs to this Court. There is no indication whatsoever from the contemporary evidence of his behavior during his colloquies or appearances at the plea and sentencing that he was anything other than completely normal and sane and knew exactly what he was doing at these proceedings. There is nothing to evidence that there was a bar to his mentioning these facts to his attorney, which would have taken but a moment to do.
William Landry, the IDB attorney who represented Sheppard at the time of the guilty plea here in question, testified at the evidentiary hearing in this matter that pri- or to Sheppard’s plea he filled out the Boy-kin form, read it to Sheppard, and gave him a copy of it. After Sheppard had gone over it, Mr. Landry asked him if he had any questions and whether he specifically understood what he was reading and what he was doing. Mr. Landry explained that he did not have an independent recollection of exactly what happened at the time he represented Sheppard, but testified that he would have asked him what happened and whether he had any defenses, and that the only thing Sheppard told him was that “they were going to ask for a pre-sentence investigation. That’s all.” In Mr. Lan *1207 dry’s opinion, Sheppard at that time knew what he was doing and it was voluntary, Landry having spent about fifteen minutes with Sheppard prior to the guilty plea.
On cross-examination, Mr. Landry testified thusly when asked by defense counsel whether he had advised Sheppard that he had a possible defense of insanity:
A. If I talk to a client and he indicates to me that he does have a mental problem I would ask for it [the insanity defense]. At the time I went over this with Mr. Sheppard, he did not indicate to me or didn’t impress me that he had any mental problems. He didn’t tell me anything at all. I had no reason to believe that he had.
And on redirect examination Mr. Landry’s testimony was as follows:
Q. Mr. Landry, if the defendant had told you that he was high on P. C.P. at the time of the crime, does your legal background and experience give you enough knowledge to know you should have advised him of his defense under R.S. 14:70? (sic).
A. Had he told me that and if I had had any indications I would have asked for a sanity commission at that time.
Q. Would you have advised him that he had a possible defense of intoxication due to drugs if he had given you any of that information?
A. Yes, Ma’am.
Q. Did he give you any of that information?
A. Not at all.
Q. Did he appear in any way under the influence of any sort of drugs, withdrawal or otherwise at the time you talked to him?
A. Not at the time I talked with him. No, ma’am.
We note further that Mr. Landry’s testimony has never been disputed by Sheppard, who did not testify at the evidentiary hearing (or by anyone else).
We are thus made cognizant of the fact that only in pleadings drawn up more than three years after the crimes has Sheppard began trying to overturn his guilty plea on the basis that at the time of the two armed robberies, he was addicted to PCP and suffering from drug induced hallucinations.
Armed robbery is now a crime requiring only general intent. [See authorities INFRA ]. In this connection we turn now from the facts to the relevant jurisprudence. Our Supreme Court, in State v. Scott, 344 So.2d 1002 (La.1977), stated as follows:
Insanity is a defense to any crime when the circumstances indicate ‘that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question ...’ R.S. 14:14. Voluntarily induced intoxication, however, is only a defense when the condition ‘has precluded the presence of a specific criminal intent or of a special knowledge required in a particular crime ...’ R.S. 14:15. Thus, it provides no defense to crimes only requiring a general intent. State v. Boleyn, 328 So.2d 95 (La.1976).
******
The legislature obviously intended that a person should be held responsible for the consequences of his voluntarily induced intoxication. Thus, in a crime requiring general criminal intent the requisite intent is ‘generally found in the accused’s intention to become intoxicated, i.e., the accused is held to have intended, in law, all the consequences of his intoxicated condition.’ State v. Boleyn, supra, at 99. The exception the legislature provided for is when the intoxicated condition precluded the formation of specific intent; in such a case, intoxication does provide a defense. To the extent, however, that a person is incapable of distinguishing between right and wrong solely due to an overly intoxicated condition, without some additional proof of mental disorder, the legislature intended to prevent such drunkenness from becoming a defense to a general intent crime. See Reporter’s comments to R.S. 14:15.
[Emphasis supplied in some instances].
*1208 See also State v. Dean, 487 So.2d 709 (La.App. 5 Cir.1986), writ denied, 495 So.2d 300 (La.1986); State v. Pier, 530 So.2d 1253 (La.App. 2 Cir.1988), writ denied, 536 So.2d 1234 (La.1989), and State v. Sanders, 567 So.2d 177 (La.App. 4 Cir.1990).
It is well settled that voluntary intoxication can be considered as a defense only in cases where specific intent is a necessary element of the crime. State v. Boleyn, 328 So.2d 95 (La.1976). Aggravated rape is a general intent crime. See LSA-R.S. 14:11; 14:42. In cases wherein the accused is voluntarily intoxicated at the time of the commission of the offense, the necessary [general] criminal intent is generally found in the accused’s intention to become intoxicated, i.e., the accused is held to have intended, in law, all the consequences of his intoxicated condition. State v. Boleyn, supra. Thus, the evidence of intoxication to which the witness would have testified was not a material fact.
State v. McDaniel, 515 So.2d 572 (La.App. 1 Cir.1987).
The element of specific intent is no longer an essential element of the crime of armed robbery. In State v. Gordon, 504 So.2d 1135 (La.App. 5 Cir.1987), a panel of this Court, with Judge Wicker as author of the opinion, found that the element of specific intent had been removed from armed robbery, in the following footnote:
Prior to Acts 1983, No. 70, Subsection 1, L.S.A.-R.S. 14:64 had provided in pertinent part:
A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. [Emphasis supplied]
Theft is defined by R.S. 14:67 as:
the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Because theft was an essential element of armed robbery, proof of a specific intent to deprive the owner permanently of the subject of the theft was also essential to the proof of armed robbery. State v. Johnson, 368 So.2d 719 (La.1979). The 1983 act changed the statute by replacing “theft” with “taking of’. This change removed the element that the defendant have the intent to permanently deprive.
See State v. Gordon, 504 So.2d 1135 (La.App. 5 Cir.1987).
LSA-R.S. 14:15 reads as follows:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
[Emphasis supplied].
Accordingly, we find it is clear that while the general defense of insanity is a defense to any crime, intoxication is relevant only to those crimes which require specific intent. Therefore, while the blanket statement made by the trial court that “the plea of not guilty by reason of insanity was not validly available to the defendant at the time the plea was made” is technically legally incorrect as being a statement which is too broad, under the particular facts of this case, the court did not err. The defense of insanity by reason of voluntary intoxication was not available to this defendant who was charged with armed robbery. Inasmuch as there is nothing in the record to indicate that the possible insanity defense could have any *1209 basis other than intoxication, if it had any valid basis at all, we hold that the first assignment of error is without merit.
The second assignment of error relative to ineffective assistance of counsel is likewise without merit, since it is based on the intoxication/insanity defense. Assuming, for the sake of argument only, the defendant’s alleged state of voluntary intoxication at the time of the crime, an intoxication/insanity defense would have been improper as not available for this crime and therefore, failure to raise such an issue does not constitute ineffective assistance of counsel. State v. Frank, 549 So.2d 401 (La.App. 3 Cir.1989). In this connection we note that the record discloses that, prior to the plea, the defendant was duly and properly advised by the defense counsel and the trial court of all of the constitutional rights that he did have available to him.
This Court made the following analysis in State v. Darville, 573 So.2d 1155 (La.App. 5 Cir.1991), based on the two prong requirements laid down by the United States Supreme Court:
Defendants in criminal trials are entitled to effective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, Section 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must meet the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rehearing denied 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).
First, defendant must show that his counsel’s performance was deficient. This requires showing that his counsel made errors so serious that he was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment. The performance inquiry must be whether counsel’s assistance was reasonable considering all the circumstances.
Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that his counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. When a defendant challenges a conviction on this basis, the question presented is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt concerning the guilt of the defendant.
This two-part test of Strickland v. Washington, supra, also applies to challenges of guilty pleas based on ineffective assistance of counsel. State v. Washington, 491 So.2d 1337 (La.1986). [Emphasis supplied].
In State v. Washington, 491 So.2d 1337 (La.1986), our Louisiana Supreme Court quoted, at length, from the United States Supreme Court opinion in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), which we reiterate here as follows:
Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel’s advice ‘was within the range of competence demanded of attorneys in criminal cases.’ McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).
% ⅛ # % ⅜ ⅜
Two Terms ago, in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we adopted a two-part standard for evaluating claims of ineffective assistance of counsel. There, citing McMann, we reiterated that ‘[w]hen a convicted defendant complains of the ineffectiveness of counsel’s assistance, the defendant must show that counsel’s representation fell below an objective standard of reasonableness.’ Id., at 687-688, 104 S.Ct., at 2065. We also held, however, that ‘[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ Id., at 694, 104 S.Ct., at 2068. This additional ‘prejudice’ requirement was based on our conclusion that ‘[a]n error by counsel even if professionally unreasonable, does not *1210 warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.’ Id., at 691, 104 S.Ct., at 2067.
******
We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)], supra, and McMann v. Richardson, supra. The second, or ‘prejudice,’ requirement, on the other hand, focuses on whether counsel’s constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the ‘prejudice’ requirement, the defendant must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial. [Several Courts of Appeals have adopted this general approach.]
Considering the law and the jurisprudence outlined above, we are unable to conclude that had the attorney advised the defendant of the possibility of an insanity/intoxication defense, the result or defendant’s decision would have been different, or that defendant would not have pleaded guilty, once properly advised that this defense was simply not available or applicable to him. Accordingly, this assignment of error is also without merit.
Finally, defendant alleges that he was denied the right to present evidence relevant to the merits of his application for post-conviction relief. At the remand, Sheppard attempted to have a Sanity Commission appointed to evaluate his mental capacity at the time of the crime, but the trial court denied the motion, as well as a defense motion to have access to the pre-sentence evaluation. The trial court found that the remand was solely on the narrow issue of whether Sheppard knew of the availability of the intoxication/insanity defense at the time of his plea.
We agree that the remand was intended to have the trial court ascertain whether the defendant, prior to his plea, was made aware by his counsel of the “possibility ” of an “intoxication-insanity” defense, as discussed above. The court did just that, determining that that possibility was not made known to Sheppard by his attorney, but that such defense was nevertheless unavailable to him. We have already determined the correctness of this finding. Thus, the court did not err in refusing to appoint a sanity commission or to otherwise expand the hearing beyond its intended scope. This assignment of error is also without merit.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

. See State v. Sheppard, supra, in which the court stated:
When a police officer attempted to apprehend Sheppard following the second armed robbery, a scuffle ensued during which the policeman was shot three times and left on the ground crying for help. Sheppard was arrested later at his residence.

. State v. Sheppard, supra:
Sheppard told the probation officer doing the presentence investigation that he (Sheppard) had been smoking PCP cigarettes on the night of the robberies and that he was hallucinating.